UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BRIGGS, | |
| Plaintiff, | No. 20 C 1733 |
| v. | Judge Thomas M. Durkin |
| SMG FOOD AND BEVERAGE, L.L.C., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Michael Briggs sued his former employer, SMG Food and Beverage, for discrimination on the basis of race and sex. SMG moved for summary judgment. R. 45. For the reasons that follow, that motion is granted.

**Background**

Beginning in 2007, Briggs worked for a company called Savor Chicago. Savor had a contract to supply food to the McCormick Place convention center. In 2011, SMG took over the food contract and Briggs became an SMG banquet captain.

The terms of Briggs's employment are governed by a collective bargaining agreement between SMG and Local 1 Union. The agreement provides that employees are to be scheduled in order of seniority. There are three seniority tiers: A, B, and C. The A list includes full-time employees. The B list includes part-time employees. To remain on the B list, employees must work a certain number of days per year (35 days in the preceding fiscal year). The C list includes on-call employees. Briggs was on the B list.

If an A list banquet captain turns down a shift offered to them (or if more are needed than are on the A list), B list captains are offered those shifts. When a B list captain is offered a shift, they must call and verify with the scheduling coordinator whether they accept or decline the work. If they fail to do so, they are dropped from that week's schedule.

Briggs had two leaves of absence in 2014 and 2015. The first was for an injury and lasted from September 11, 2014 until November 29, 2014. The second was from February 11, 2015 until February 28, 2015. He did not work during those periods and was subsequently moved to the C list for failing to accrue the required hours to maintain A or B list status.

Briggs complained to supervisors about his concerns regarding his schedule, as he believed he should be receiving more shifts. He also complained about various inappropriate comments made to him by coworkers about, among other things, his sexual orientation.

On March 11, 2015, Briggs filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging he was discriminated against because of his sex (male), sexual orientation ("non-heterosexual"), and race (white) by not being scheduled to work as often as his coworkers and being subject to harassment. The EEOC issued a right to sue letter on December 12, 2019. Briggs filed his complaint in this Court on March 11, 2020, claiming discrimination on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964. SMG filed the instant motion for summary judgment on December 7, 2021.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

Briggs claims at various times beginning in 2007, he was subjected to harassment by SMG employees. Specifically, Briggs claims two Hispanic, heterosexual coworkers made sexual jokes toward him, called him "Michelle," and referred to him and another coworker as "day time friends, night time lovers." R. 1 at 2-3. He also alleges he was reassigned to the C list without justification while other similarly situated employees were given A list assignments. Briggs contends he filed multiple grievances which were either ignored or not advanced.

SMG argues Briggs's claims are not related to those raised in his EEOC charge, and that they all fail as a matter of law.

### I. Relation to EEOC charge

SMG first argues that Briggs claims are not reasonably related to those in his EEOC charge. In his EEOC charge, Briggs alleged he was discriminated against based on his sex and race by not being scheduled as often as his coworkers, and that he was harassed. Here, he alleges the above conduct, as well as claims that SMG failed to process his union grievances and paid him less.

A plaintiff may not bring claims under Title VII that were not originally included in his EEOC charge. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256-57 (7th Cir. 2011). There is an exception for claims brought under Title VII that are "like or reasonably related" to the EEOC charge and can be reasonably expected to grow out of an EEOC investigation into the charges. *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)).

Briggs's claim that he was paid less is the same claim as his scheduling one— he argues his reduced schedule resulted in less wages earned. He makes no other specific arguments about being paid less. The analysis of his scheduling arguments, *infra*, therefore resolves both issues.

As for his claim that his union grievances were not processed, the Court agrees with SMG that the claim is not reasonably related to his EEOC charge. The claim that his grievances were not processed implicates different individuals and involves entirely different conduct than his claims regarding scheduling. To be reasonably

4

related, the two claims must "at a minimum, describe the same conduct and implicate the same individuals." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 832 (7th Cir. 2015).

But even if Briggs's claim was reasonably related to his EEOC charge, he admitted that SMG responded to two grievances that he filed regarding his scheduling concerns (and paid him back wages on one of them). PR ¶¶ 40, 44, 46, 47, 51.[1] He also admits that his remaining grievance was abandoned by Local 1 after Briggs failed to appear at the grievance hearing. *Id.* ¶¶ 52-53. The motion for summary judgment on his claim that his grievances were not processed is granted.

## II.    Scheduling

Briggs claims he was not scheduled to work as often as other employees due to either his race, sex, or sexual orientation. To establish employment discrimination under Title VII, courts in this Circuit ask:

> [W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the … adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself … Relevant evidence must be considered and irrelevant evidence disregarded.

*Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (internal quotation marks omitted) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

---

[1] References to SMG's Rule 56 statement of facts will be cited as "DSOF." References to Briggs's statement of facts will be cited as "PSOF." References to Briggs's responses to SMG's statement of facts will be cited as "PR." References to SMG's responses to Briggs's statement of facts will be cited as "DR."

5

Courts "continue to use the familiar *McDonnell-Douglas* burden shifting framework" to evaluate the evidence in the record. *Gallardo v. Chicago Transit Authority*, 2018 WL 4699754, at *5 (N.D. Ill. Sept. 29, 2018) (citing *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (noting that "*Ortiz*, however, did not alter the burden-shifting framework created by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish prima-facie discrimination under this framework, Briggs needs to show: (1) he belongs to a protected class; (2) he performed his job in accord with SMG's legitimate expectations; (3) he suffered an adverse employment action despite his reasonable performance; and (4) SMG treated other similarly situated employees outside the protected class more favorably. *Johnson*, 892 F.3d at 895. If Briggs meets this standard, the burden shifts to SMG to articulate a legitimate, non-discriminatory reason for failing to give Briggs certain shifts. *David*, 846 F.3d at 225; *see also Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). Briggs then must submit evidence that SMG's provided explanation is pretextual. *Id.*

The *McDonnell-Douglas* framework is not the sole means by which a plaintiff may make the required showing of discrimination. *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 601 (7th Cir. 2020). A plaintiff is "entitled to present any evidence he can muster to show that discrimination was the reason for the adverse action." *Hester v. Indiana State Dep't of Health*, 726 F.3d 942, 947 (7th Cir. 2013). Such evidence may include "suspicious timing, ambiguous statements or behavior directed at others in

6

the protected group; and evidence that similarly situated employees outside the protected class were treated more favorably." *Id*.

Here, SMG argues there is no evidence of a similarly situated employee who was treated more favorably. In his deposition, Briggs identified Calvin Clark, an African American male, as a similarly situated employee who received more work than Briggs. But the record shows that Clark did not take any significant leaves of absence and was generally available to work at times when Briggs was not. In order to establish Clark as a similarly situated employee, Briggs needs to show that Clark was equally unavailable but was not moved to the C list. Instead, the record supports SMG's position that Clark was given more shifts due to his availability, and Briggs was moved to the C list because of how many days he missed.

Moreover, Briggs argues Clark received better shifts because of Briggs's race and sex, but in his deposition, he stated: "[Clark] is friends with director of banquets and he's scheduling him and not me. It's favoritism."[2] R. 54 at 4. Favoritism based on personal relationships is not prohibited by Title VII, and Briggs has presented no evidence that the favoritism was based on a proscribed factor outlined in the statute. *See Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002).

Even if Briggs had identified a similarly situated employee, SMG has clearly shown that Briggs was moved to the C list because he did not accrue enough hours to maintain a position on the A or B list. In total, Briggs did not work from September

---

[2] Notably, Briggs agrees that the managerial employees responsible for scheduling him were Melissa Matthews and Chanda Dunmars, not the banquet director who was friends with Clark. PR ¶ 30.

7

11, 2014 to November 21, 2014, and took another leave of absence from February 11 to February 28, 2015. Briggs acknowledges that, pursuant to the collective bargaining agreement, he did not accrue hours toward his placement on the seniority list during those absences. PSOF ¶ 36. These extended periods in which Briggs was not working, SMG argues, are the reason he failed to accrue the required 35 days he needed to maintain a position on the B list. This is a legitimate, non-discriminatory reason for Briggs's reduction in hours. He has not made any argument that it is a pretext, only reiterating that it was because of his race and sex. Nor has he presented circumstantial evidence to tie his scheduling changes to any kind of discriminatory intent. A rational factfinder could not reach the conclusion that SMG changed Briggs's schedule because of his race or sex. Summary judgment on Briggs's claim that he suffered a reduction in hours due to his race and sex is granted.

### III. Harassment

To survive summary judgment on his hostile work environment claim, Briggs needs to show: (1) his work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on his race or sex; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).[3] To rise to the level of a hostile

---

[3] SMG argues Briggs's harassment claim is untimely because it involves conduct allegedly occurring as early as 2007. But "a discrimination charge based on a hostile working environment encompasses all events during that hostile working environment so long as the charge is filed within the charging period (…within 300 days of the 'act said to constitute the discriminatory working condition.')". *Scruggs v. Garst Seed Co.*, 587 F.3d 840 (7th Cir. 2009) (internal citations omitted). Briggs

work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment. *Scruggs*, 587 F.3d at 840. Factors in this assessment include "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id*. Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment. *Id*. at 841.

Here, the conduct was not severe or pervasive. Viewing the record in the light most favorable to Briggs, he was subjected to offensive behavior such as coworkers "misidentifying his name in a gender inappropriate way," and making "inappropriate comments of a sexually harassing nature." R. 51 at 7. Some of these comments included being referred to (along with another coworker) as "day time friends, night time lovers" and a coworker asking if he was going to "get a free one" (referring to oral sex) when Briggs bent over to tie his shoe. R. 51 at 2. The comments were made by two Hispanic coworkers, Jose Campos and Javier Jimenez. Briggs contends these comments rise to the level of harassment and were based on his race and sexual orientation, but he does not provide more than one paragraph in making this argument, and does not at all explain how the alleged conduct impacted his working environment. *See* R. 51 at 7.

---

argues the harassment is ongoing, or at least was ongoing at the time he filed his EEOC charge. The Court therefore will consider all conduct he alleges.

Courts have found that similar language does not constitute a hostile working environment. *See, e.g., Swyear v. Fare Foods Corp.*, 911 F.3d 874, 878 (7th Cir. 2018) (nicknames such as "Bitchy Ritchie," as well as employer's inappropriate jokes that he and the employee would stay in a hotel room together, did not constitute a hostile work environment); *Scruggs*, 587 F.3d at 841 (comments by supervisor that plaintiff was "made for the back seat of a car" and looked like a "dyke" were not objectively severe or pervasive); *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005) (no hostile work environment where harasser referenced plaintiff's "tits," commented to the plaintiff about his penis size, and commented that a female coworker needed to have more sex); *Kawcynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1086-87 (N.D. Ill. 2017) (consistent name calling that hurt plaintiff's feelings and affected him emotionally but did not interfere with his work did not amount to a hostile work environment). The comments here are the kind of "isolated incidents that, because they were not 'extremely serious,' will not support a hostile work environment claim." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648 (7th Cir. 2011) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).

Importantly, even if the comments directed at Briggs were severe or pervasive, SMG would not be liable for them. Because the comments were made by Briggs's coworkers, not a supervisor or someone in a position of authority over him, SMG is liable for the alleged hostile work environment if it was negligent either in discovering or remedying the harassment. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). Here, Briggs initially argued that his complaints of harassment

went unanswered, but later admitted that when he emailed the human resources director on March 12, 2015 (notably, after he filed his EEOC charge), she investigated his claims. PR ¶ 61. Her investigation included, among other things, interviews with Campos and Jimenez. He does not raise any challenge to the thoroughness or legitimacy of her investigation.

Further, Briggs makes no argument that the comments impacted his ability to do his job (or that they had any impact on him at all). *Compare Smith v. Illinois Dep't of Trans.*, 936 F.3d 554, 561 (7th Cir. 2019) (affirming summary judgment where plaintiff was called a racial slur but presented no evidence as to how it impacted him) *with Orton-Bell v. Indiana*, 759 F.3d 768, 775 (7th Cir. 2014) (reversing a grant of summary judgment, in part, because the plaintiff testified that the working environment was oppressive and interfered with her ability to do her job). While offensive, "fleeting, boorish behavior, particularly from someone not in a position of authority over the plaintiff (an important consideration), is not severe enough to rise to the level of a hostile working environment." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). Briggs has not met this demanding standard.

## Conclusion

For the above reasons, SMG's motion for summary judgment, R. 45, is granted.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: July 25, 2022

11